UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 19-cr-0274 (WMW/KMM) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| John Edward Juneau, | |
| Defendant. | |

---

This matter is before the Court on the December 21, 2020 Report and Recommendation (R&R) of United States Magistrate Judge Katherine M. Menendez. (Dkt. 91.) The R&R recommends denying Defendant John Edward Juneau's motions to suppress evidence, motion for a *Franks* hearing, and motion to exclude evidence. (Dkts. 40, 41, 59, 70, 75.) Juneau filed timely objections to the R&R. Plaintiff United States of America filed a timely response. For the reasons addressed below, the Court overrules Juneau's objections and adopts the R&R.

**BACKGROUND**

As the relevant factual background and procedural history are addressed in detail in the R&R, the Court does not repeat them at length here. The summary that follows is based on facts relevant to the Court's resolution of Juneau's objections to the R&R.

The United States charged Juneau by indictment with two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B); one count of possessing and carrying firearms in furtherance of, and

during and in relation to, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of unlawful possession of firearms by a convicted felon, in violation 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Juneau filed several pretrial motions, including three motions to suppress, a motion for a *Franks* hearing, and a motion to exclude evidence. On September 4, 2020, the magistrate judge held an evidentiary hearing at which, as relevant here, Columbia Heights Police Detective Paul Bonesteel testified regarding a warrant application for the search of a Columbia Heights residence and Maple Grove Police Detective Dan Neitzel testified regarding a warrant application for the search of a Coon Rapids residence. Two defense witnesses and Juneau also testified. The facts relevant to the two challenged search warrants are summarized below.

### A. Columbia Heights Search Warrant

In June 2018, Juneau entered into a month-to-month rental agreement at a residence in Columbia Heights, Minnesota (Columbia Heights residence). On January 11, 2019, Juneau moved out of the Columbia Heights residence, but he continued to store some of his property in the garage of the Columbia Heights residence after moving out.

On January 25, 2019, Detective Bonesteel applied for a search warrant for the Columbia Heights residence to search for drugs and other evidence of criminal activity. Detective Bonesteel's affidavit supporting the Columbia Heights search warrant includes, among other things, information received from a confidential informant, the presence of trace amounts of methamphetamine located in the garbage can outside the residence, and the presence of Juneau's car parked outside the residence on January 24, 2019. When officers executed the warrant, they seized methamphetamine, drug paraphernalia and a

cellular phone. During the search of the residence, Juneau stood in the garage near a pair of bib overalls. Officers seized three bags containing methamphetamine located inside the pockets of the overalls. DNA obtained from two of the bags linked those items to Juneau.

### B.     Coon Rapids Search Warrant

Juneau subsequently moved from the Columbia Heights residence to his brother's residence in Andover, Minnesota. Although Juneau resided with his brother most of the time, Juneau also spent time at a residence in Coon Rapids, Minnesota (Coon Rapids residence).

Detective Neitzel applied for a warrant on July 3, 2019, to search the Coon Rapids residence for drugs and other evidence of criminal activity. Detective Neitzel's affidavit supporting the Coon Rapids search warrant includes the assertion that Jamie Shore, who had been linked to methamphetamine trafficking, made numerous stops at the Coon Rapids residence between May 10, 2019, and June 26, 2019. Based on his training and experience, Detective Neitzel attested, the duration of these stops was consistent with the behavior of people involved in the sale of controlled substances.

When the officers executed the warrant, they seized methamphetamine as well as other items linked to Juneau. They also seized bags containing methamphetamine from the garage of the Coon Rapids residence, and DNA testing subsequently linked those items to Juneau. In a safe located in the garage, officers seized two firearms. After procuring a warrant to obtain a DNA sample from Juneau, law enforcement officers confirmed that the DNA taken from one of the firearms matched Juneau's DNA profile.

Juneau moves to suppress the evidence obtained pursuant to the Columbia Heights and Coon Rapids search warrants, moves for a *Franks* hearing, and moves to exclude the firearms obtained pursuant to the Coon Rapids search warrant. Following an evidentiary hearing, the magistrate judge issued the pending R&R, which recommends denying Juneau's motions. Juneau objects to the R&R's recommendation to deny his motions to suppress the evidence seized during the searches of the Columbia Heights and Coon Rapids residences.

## ANALYSIS

### I.   Juneau's Objections to the December 21, 2020 R&R

A district court reviews *de novo* the parts of the R&R to which an objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3); LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Juneau objects to the magistrate judge's determination that the law enforcement affidavits used to obtain the search warrants for the Columbia Heights residence and the Coon Rapids residence provided a substantial basis for the issuing judge to conclude that probable cause existed.

A defendant has the right, under the Fourth and Fourteenth Amendments to the United States Constitution, to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). A presumption of validity exists as to the affidavit supporting the search warrant. *Id.* at 171. But evidence must be suppressed when a defendant establishes by a preponderance of evidence that an affiant either knowingly and intentionally, or with reckless disregard for the truth, included false information in the search warrant affidavit and that, if the false

4

information were set aside, the remaining content of the affidavit would fail to establish probable cause. *United States v. Butler*, 594 F.3d 955, 960–61 (8th Cir. 2010). The same analysis applies to deliberate or reckless omissions of fact. *See United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995). To determine whether an affiant's statements were made with reckless disregard for the truth, a district court considers whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. *See Butler*, 594 F.3d at 961. A district court limits its inquiry to "discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *Id.* at 962 (concluding that "great deference" is given to the probable cause determination of the court that issued the search warrant). The Court addresses Juneau's objections as to each search warrant affidavit in turn.

### A. Columbia Heights Search Warrant

With respect to the affidavit in support of the Columbia Heights search warrant, Juneau argues that the magistrate judge erred by (1) failing to acknowledge the intervening trash collection that occurred after Juneau moved out but before Detective Bonesteel executed the search warrant and, relatedly, failing to give weight to the absence of anything in the trash that connected Juneau to the property; (2) improperly considering evidence of Juneau's DNA seized during the Columbia Heights search to justify the warrant retroactively; (3) failing to apply the "collective knowledge" doctrine to impute knowledge of Juneau's move-out date to Detective Bonesteel; and (4) failing to give proper weight to

the absence of details provided by Detective Bonesteel as to the confidential informant's statements. The Court addresses each objection in turn.

### 1. Intervening Trash Collection and Contents of the Trash

Juneau first asserts that the R&R fails to acknowledge that there had been an "intervening garbage pick-up" during the period between January 11, 2019, when Juneau moved out of the Columbia Heights residence, and February 1, 2019, when the officers executed the search warrant. Relatedly, Juneau contends that the R&R fails to adequately consider the absence of anything in the trash linking Juneau to the property.

Even if Detective Bonesteel's affidavit had explained that nothing obtained from the trash seized on January 23, 2019, could be linked to Juneau, there would have been more than sufficient other information in the affidavit to establish probable cause for the search of the Columbia Heights residence. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (concluding that whether probable cause exists is a "common-sense decision" that weighs the totality of the circumstances that are detailed in a warrant application). Juneau does not dispute that on or about January 23, 2019, officers seized four bags containing trace amounts of methamphetamine in trash cans outside the Columbia Heights residence. This fact supports a reasonable inference that the Columbia Heights residence was occupied, as of that date, by people who had handled methamphetamine. The officers' recovery of drugs from the garbage "contributes significantly to establishing probable cause." *United States v. Briscoe*, 317 F.3d 906, 908–09 (8th Cir. 2003) (holding that the recovery of drugs from defendant's trash was *independently adequate* to establish probable cause for a search warrant and collecting cases).

Similar to the facts in *Briscoe*, the presence of a discarded controlled substance, methamphetamine in this case, reasonably suggests that ongoing consumption or trafficking of that substance was occurring within the premises. Moreover, merely possessing methamphetamine is a crime under federal and state law. *See* 21 U.S.C. § 844; Minn. Stat. § 152.025. Even if the search warrant affidavit included information about an intervening garbage pick-up *and* acknowledged that nothing seized from the trash linked the trash with Juneau, the affidavit nonetheless would have established a substantial basis for probable cause to search the Columbia Heights residence. Because Juneau fails to demonstrate that the inclusion of these facts would defeat the existence of probable cause, *see Gladney*, 48 F.3d at 313, Juneau's objection on this basis is overruled.

    2. *Relying on Evidence Seized Pursuant to the Search*

Juneau next argues that the R&R improperly relies on evidence obtained during the Columbia Heights search to retroactively justify the warrant issued for that search. The DNA evidence obtained as a result of the search is irrelevant to the probable cause analysis, Juneau contends, because that evidence could not have been known when the search warrant was issued. This argument misconstrues the R&R. Although the R&R refers to DNA evidence when addressing the background, the R&R does not rely on the DNA evidence as a basis for determining whether there was probable cause to issue the search warrant. This objection is overruled.

    3. *"Collective Knowledge" Doctrine*

Juneau also argues that the R&R errs by not applying the "collective knowledge" doctrine to impute Columbia Heights Police Officer William Monberg's knowledge of

7

Juneau's January 11, 2019 eviction date to Detective Bonesteel. "The collective knowledge doctrine imputes the knowledge of all officers involved in an investigation upon the seizing officer in order to uphold an otherwise invalid search or seizure." *United States v. Banks*, 514 F.3d 769, 776 (8th Cir. 2008) (internal quotation marks omitted). But Juneau cites no legal authority, nor is the Court aware of any, establishing that the "collective knowledge" doctrine renders an affidavit untruthful because other officers received different information than the officer who prepared the affidavit.

An affidavit may be deemed untruthful when there is evidence that the police are collectively attempting to insulate an officer's "deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Franks*, 438 U.S. at 163 n.6. Here, there is no evidence that the police department chose Detective Bonesteel to submit the affidavit because he did not know where Juneau lived or when Juneau was evicted. Even if Detective Bonesteel knew of Juneau's January 11, 2019 eviction when Detective Bonesteel applied for the search warrant, there still would be sufficient evidence obtained from the search of the trash bins and Detective Bonesteel's personal observation of a vehicle registered to Juneau parked outside of the Columbia Heights residence on January 24, 2019, to reasonably conclude that a person living in the residence had handled methamphetamine. *See Butler*, 594 F.3d at 961 ("Omissions of facts in a supporting affidavit do not constitute misrepresentations unless they cast doubt on the existence of probable cause."). Without more, the presence of methamphetamine in the trash bins and Detective Bonesteel's personal observations linking Juneau's vehicle to the Columbia Heights residence were sufficient to establish probable cause. *See Briscoe*, 317 F.3d at

908–09. Accordingly, because Juneau has failed to demonstrate that the inclusion of facts known to Officer Monberg would defeat the existence of probable cause, the Court overrules this objection.

### 4. *Confidential Informant*

Juneau also contends that Detective Bonesteel's affidavit reflects a reckless disregard for the truth because the information derived from the confidential informant lacked sufficient detail.

"When a confidential informant provides information in support of a search warrant, the issuing magistrate considers the informant's reliability and the basis of his knowledge." *Butler*, 594 F.3d at 962. "The totality of the circumstances analysis applicable to probable cause determinations, however, does not mandate that both factors be present before a warrant may issue." *Id.* Information provided by a confidential informant is sufficiently reliable if it is "corroborated by other evidence." *Id.*

Detective Bonesteel corroborated the confidential informant's statements regarding where Juneau lived, Juneau's appearance, and Juneau's involvement with drugs. Under the totality-of-the-circumstances analysis, the judge who issued the search warrant could reasonably have concluded that the confidential informant's statements contributed to a determination of probable cause to search the Columbia Heights residence. Indeed, even without the confidential informant's observations, the affidavit contains sufficient information to support a finding of probable cause for the reasons addressed above. *See Briscoe*, 317 F.3d at 908–09.

9

Accordingly, Juneau's objections to the R&R's recommendations as to the Columbia Heights search warrant are overruled.

### B. Coon Rapids Search Warrant

With respect to the affidavit in support of the search warrant for the Coon Rapids residence, Juneau argues that the magistrate judge erred by (1) failing to give proper weight to other explanations for why Shore, who was linked to methamphetamine trafficking, visited the Coon Rapids residence; (2) failing to address the affidavit's false statement that the bib overalls, from which officers seized methamphetamine during the Columbia Heights search, "belonged to Juneau;" and (3) considering evidence seized during the Coon Rapids search as a retroactive justification to issue the search warrant for that location. The Court addresses each objection in turn.

#### 1. Alternative Explanation for Shore's Visits

Juneau asserts that the R&R fails to consider alternative explanations for Shore's visits to the Coon Rapids residence. Shore and Juneau are life-long friends who were repairing a fence at the Coon Rapids residence, Juneau contends.

The R&R considers this explanation along with the other explanations offered to explain Shore's visits. After doing so, the R&R concludes that nothing in the record suggests that Detective Neitzel knowingly or deliberately omitted from the Coon Rapids warrant application exculpatory information about Shore. Shore had been linked to a previous drug trafficking operation. The government made multiple controlled purchases of methamphetamine from Shore. And, based on GPS tracking of Shore's vehicles, Detective Neitzel reasonably suspected that Shore's eighteen visits to the Coon Rapids

10

residence—several of which occurred in the middle of the night and were only several minutes in duration—were conducted in a manner that was consistent with drug-trafficking activity and inconsistent with Juneau's alternative explanations. The affidavit provides a substantial basis for finding probable cause. Because the totality of the evidence pertaining to Shore's visits to the Coon Rapids residence supports a finding of probable cause, the Court overrules Juneau's objection as to this portion of the R&R.

### 2. *Alleged False Statement that Bib Overalls "Belonged to Juneau"*

Juneau contends that Detective Neitzel recklessly misrepresented the facts by attesting in his search warrant affidavit that, during the previous Columbia Heights search, "an ounce of methamphetamine was recovered from a pair of bibs belonging to Juneau." The question before the Court is whether Detective Neitzel's statement was made "with reckless disregard for the truth." *See Butler*, 594 F.3d at 960–61. Officers seized bib overalls that were in close proximity to Juneau during the Columbia Heights search, and Detective Neitzel knew that a DNA test had confirmed the presence of Juneau's DNA on the bags of methamphetamine seized from those bib overalls. Detective Neitzel's affidavit attributes ownership of the bib overalls to Juneau. Detective Neitzel's affidavit does not state that Juneau owned the methamphetamine. Detective Neitzel's statement in the affidavit was not made with reckless disregard for truth. Because Juneau has failed to demonstrate that the affidavit was deliberately false or made in reckless disregard for the truth, the Court overrules this objection.

11

### 3. *Reliance on Evidence Seized During the Search*

Juneau also contends that the R&R errs by relying on evidence seized from the Coon Rapids residence to retroactively support probable cause. Because officers could not have known of this evidence before the search, Juneau argues, it cannot be considered when determining whether the warrant should have been issued. This argument misconstrues the R&R. Although these facts are included in the background section of the R&R, no aspect of the R&R's legal analysis relies on evidence seized during the Coon Rapids search to justify the conclusion that there was probable cause to conduct the search. Moreover, the totality of the information in the Coon Rapids search warrant affidavit supports a finding of probable cause. Therefore, this objection is overruled.

Accordingly, Juneau's objections to the R&R's recommendations as to the Coon Rapids search warrant are overruled.

## II. Clear-Error Review

As Juneau does not object to any other aspect of the R&R, the Court reviews the remainder of the R&R for clear error. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59; *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001); *accord Grinder*, 73 F.3d at 795. Having carefully performed this review, the Court finds no clear error.

## ORDER

Based on the December 21, 2020 R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant John Edward Juneau's objections, (Dkt. 94), to the December 21, 2020 R&R, (Dkt. 91), are **OVERRULED**.

12

2. The December 21, 2020 R&R, (Dkt. 91), is **ADOPTED**.

3. Defendant John Edward Juneau's motion to suppress evidence seized from the Coon Rapids residence, (Dkt. 40), is **DENIED**.

4. Defendant John Edward Juneau's motion to suppress evidence seized from the Columbia Heights residence, (Dkt. 41), is **DENIED**.

5. Defendant John Edward Juneau's motion for a *Franks* hearing, (Dkt. 59), is **DENIED AS MOOT**.

6. Defendant John Edward Juneau's motion to suppress DNA evidence, (Dkt. 70), is **DENIED**.

7. Defendant John Edward Juneau's motion to exclude firearms from evidence, (Dkt. 75), is **DENIED**.


Dated: March 3, 2021                                 s/Wilhelmina M. Wright
                                                     Wilhelmina M. Wright
                                                     United States District Judge