UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 19-cr-0274 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER ON MOTIONS IN LIMINE** |
| John Edward Juneau, | |
| Defendant. | |

---

This matter is before the Court on Plaintiff United States of America's two motions in limine—first, to strike surplusage from the superseding indictment, and second, to exclude the testimony of Defendant John Edward Juneau's expert witness. (Dkts. 106, 114.) Juneau does not oppose the motion to strike surplusage, but he opposes the motion to exclude expert testimony. In addition, Juneau moves for an order excluding the testimony of the United States's expert witness. (Dkt. 128.) For the reasons addressed below, the United States's motion to strike surplusage is granted, the United States's motion to exclude expert testimony is denied, and Juneau's motion to exclude expert testimony is denied.

## BACKGROUND

A grand jury returned an indictment in this case on October 31, 2019, charging Juneau with two counts of possession with the intent to distribute methamphetamine, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B); one count of possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C.

§ 924(c)(1)(A); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The grand jury returned a superseding indictment on December 12, 2019, alleging the same offenses. The superseding indictment alleges that Juneau possessed 5 grams or more of methamphetamine on or about February 1, 2019, and that Juneau possessed 50 grams or more of methamphetamine on or about July 9, 2019.

The jury trial in this case is scheduled to commence on April 6, 2022. In his trial brief, Juneau represents that he will not dispute at trial that he possessed the methamphetamine seized from him in February 2019. But he maintains that he did not intend to *distribute* that methamphetamine. Juneau also maintains that he neither possessed nor intended to distribute the methamphetamine seized in July 2019.

## ANALYSIS

### I.     United States's Unopposed Motion to Strike Surplusage

The United States first moves to strike surplusage from the superseding indictment—namely, the allegation in Count 3 of the superseding indictment that Juneau "did knowingly and unlawfully carry said firearms during and in relation to said drug trafficking crime." Juneau does not oppose this motion.[1]

"A court may ignore independent and unnecessary allegations in an indictment." *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994) (citing *United States v.*

---

[1] The United States appears to believe that, because Juneau does not oppose this motion, the United States has no obligation to present legal authority to support the relief it seeks. Notwithstanding the United States's failure to present *any* legal authority or argument, the Court will address the merit of the United States's request.

2

*Miller*, 471 U.S. 130, 144 (1985)).  When allegations in the indictment are not necessary to establish a violation of a statute, they are surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime.  *Id*.  An allegation may be stricken from an indictment if "nothing is added to the indictment, and the remaining allegations state the essential elements of an offense."  *United States v. Nabors*, 762 F.2d 642, 647 (8th Cir. 1985).

As relevant here, Count 3 of the superseding indictment charges Juneau with possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  Section 924(c)(1)(A) establishes criminal liability for any person who, during and in relation to a federal drug trafficking crime, "uses or carries a firearm, *or* who, in furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A) (emphasis added).  The superseding indictment alleges that Juneau "knowingly and unlawfully possess[ed] two firearms . . . in furtherance of a [federal] drug trafficking crime."  The additional allegation that Juneau "did knowingly and unlawfully carry said firearms during and in relation to said drug trafficking crime" is surplusage because it is not necessary to establish a violation of Section 924(c)(1)(A).

Accordingly, the United States's unopposed motion to strike surplusage from the superseding indictment is granted.  The allegation that Juneau "did knowingly and unlawfully carry said firearms during and in relation to said drug trafficking crime" is stricken from the superseding indictment.

## II. United States's Motion to Exclude Expert Testimony

The United States next moves to exclude the testimony of Juneau's expert witness, Marlin Meszaros. The United States argues that Meszaros's testimony is inadmissible for two reasons: his purported expertise is unreliable, and the probative value of his anticipated testimony is outweighed by the risk of confusion, unfair prejudice, undue delay, and the presentation of cumulative evidence. *See* Fed. R. Evid. 403, 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

A witness may be qualified to testify as an expert in the form of an opinion based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A qualified expert may provide opinion testimony if:

> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

*Id.* "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony" and favors admissibility over exclusion. *Id.* (internal quotation marks

4

omitted).  The admission or exclusion of expert testimony is within a district court's discretion.  *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016).

Juneau seeks to offer Meszaros, who works with recovering drug addicts, to testify about the consumption of methamphetamine.  According to Juneau, Meszaros will testify about the quantity of methamphetamine that a "serious addict" can personally consume in a short period of time, "thereby bolstering the defense position that the amount [Juneau] possessed . . . was for personal use and not for distribution."  Juneau also contends that Meszaros will testify "about the precipitous drop in the price of Methamphetamine [that] has resulted in regular users being able to purchase larger quantities of the drug for personal consumption."  Meszaros's anticipated testimony pertains to Counts I and II of the superseding indictment, which allege that Juneau possessed with the intent to distribute methamphetamine.  An essential element of this offense, which the United States must prove beyond a reasonable doubt, is that Juneau "intended to distribute some or all" of the methamphetamine that he possessed "to another person."  *See* Eighth Circuit Model Criminal Jury Instructions § 6.21.841A (2020).

The United States contends that Meszaros is not permitted to opine about Juneau's intent.  "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704(b).  The United States is correct that Meszaros may not directly testify that Juneau did not intend to distribute methamphetamine.  But "[t]estimony that, when combined with other evidence, might imply or otherwise cause a jury to infer this

5

ultimate conclusion" is admissible. *United States v. Wells*, 706 F.3d 908, 913 (8th Cir. 2013) (internal quotation marks omitted). Juneau seeks to elicit testimony from Meszaros that *implies* that Juneau possessed the methamphetamine for his personal use rather than for distribution. Courts have admitted expert opinions addressing this issue. *See, e.g.*, *United States v. Lopez*, 880 F.3d 974, 980 (8th Cir. 2018) (affirming expert opinion testimony by a law enforcement officer about the daily quantity of methamphetamine an addict can consume to address dispute over whether drugs in defendant's possession were for personal use rather than distribution). The nature of Meszaros's anticipated testimony is relevant to an essential element of the charged offenses and does not involve improper opinions as to Juneau's mental state.

To present expert opinion testimony, a witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert's qualifications need not arise from scientific knowledge or formal education. *See, e.g.*, *United States v. Holmes*, 751 F.3d 846, 849–50 (8th Cir. 2014) (observing that "formal education" about a subject matter "is not required under Rule 702"). "In drug cases, courts frequently admit expert testimony relating to the modus operandi of drug dealers, where the expert witness is a law-enforcement officer whose only qualification is experience in the field." *Id.* at 850. Meszaros is a recovering drug addict who was addicted to methamphetamine for 27 years. As the Recovery Community Coordinator at FreedomWorks Reentry and Recovery Service in Minneapolis, Meszaros works with recovering drug addicts, including individuals addicted to methamphetamine.

Although Meszaros lacks formal education and training about methamphetamine use or addiction, he undisputedly has decades of personal and observational experience with methamphetamine use. Meszaros's experience-based knowledge about the relevant subject matter is similar to "a law-enforcement officer whose only qualification is experience in the field." *See id.* (holding that formal education or training "is not required under Rule 702" if the witness has sufficient first-hand observational experience involving drug trafficking); *accord Lopez*, 880 F.3d at 980 (affirming admission of expert testimony based on witness's "18-year experience interviewing addicts, arrestees, and their family members to formulate his opinion" about the quantity of methamphetamine that an addict could use on a "drug binge"). And courts within this Circuit have permitted similar expert testimony from substance-abuse counselors and drug addicts, particularly when the "major contested issue at trial was whether the drugs were intended for distribution or for personal use." *Lopez*, 880 F.3d at 978 (describing testimony of defendant's expert, "a substance abuse counselor, who testified that '[w]hen someone's on a methamphetamine binge,' she's 'heard people use up to seven and a half grams' of drugs per day"); *accord United States v. Armstrong*, 253 F.3d 335, 336–37 (8th Cir. 2001) (observing that defendant presented "the testimony of four self-described methamphetamine addicts" about whether "a serious addict might purchase and use large quantities of methamphetamine" to rebut the government's police expert's testimony). Indeed, because Meszaros is both a recovering methamphetamine addict *and* a current substance-abuse counselor, his relevant experience is akin to—if not greater than—the defense experts who were permitted to testify about methamphetamine use in *Lopez* and

7

*Armstrong*. As such, Meszaros is qualified as an expert by knowledge and experience as to methamphetamine use.[2]

A district court must ensure that expert opinion testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. District courts are "the gatekeepers to exclude unreliable scientific testimony," and "this gatekeeper function applies to all expert testimony, not just testimony based on science." *Holmes*, 751 F.3d at 850 (citing *Daubert*, 509 U.S. at 597, and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). When assessing the reliability of expert testimony, a district court may consider "a non-exclusive checklist" of factors, including: "(1) whether the theory or technique can and has been tested, (2) whether it has been subjected to peer review, (3) whether there is a high known or potential rate of error, and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Id.* (citing *Daubert*, 509 U.S. at 592–94). Depending on " 'the particular circumstances of the particular case at issue,' these factors might apply in assessing the reliability of nonscientific expert testimony." *Id.* (quoting *Kumho Tire*, 526 U.S. at 150). When a proffered expert's "testimony is non-scientific evidence, . . . not all of the *Daubert* factors necessarily apply." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

---

[2] The United States observes that "Meszaros appears to have an extensive criminal record, which includes at least 10 felony convictions," and that he "has never testified as an expert." But the weight or credibility of an expert witness's testimony are not bases for exclusion. *See United States v. Iron Hawk*, 612 F.3d 1031, 1039 (8th Cir. 2010). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The United States argues that Meszaros's purported "expertise" is not reliable because it does not satisfy any of the four non-exclusive *Daubert* factors. Although expert testimony must be based on "reliable principles and methods," a district court's reliability determination " 'may focus upon personal knowledge or experience' rather than scientific foundations." *Id.* (quoting *Kumho Tire*, 526 U.S. at 150); *accord United States v. McDaniel*, 925 F.3d 381, 385 (8th Cir. 2019) (observing that expert testimony need not be based on scientific methodology to be admissible). As addressed above, Meszaros has decades of personal and observational experience with methamphetamine use and addiction, both as an addict himself and in his current employment assisting recovering addicts. Meszaros has first-hand knowledge about how methamphetamine is sold and used, including the quantities that addicts purchase and consume, changes in the price of methamphetamine and the culture of methamphetamine use. And courts have admitted expert opinions nearly identical to Meszaros's anticipated testimony, based on similar knowledge and experience, whether such testimony is presented by law-enforcement officers, substance-abuse counselors or drug addicts. *See Lopez*, 880 F.3d at 978–80 (involving admission of expert testimony about daily methamphetamine use by a substance-abuse counselor and a law-enforcement officer); *Armstrong*, 253 F.3d at 336–37 (involving admission of expert testimony from a law-enforcement officer and "four self-described methamphetamine addicts" about quantity of typical methamphetamine use). The United States presents no contrary legal authority.

Notably, in *Lopez*, the United States Court of Appeals for the Eighth Circuit observed that the defendant's "expert witness depended on exactly the same type of

9

information" as the government's law-enforcement officer expert—namely, "interviews with recovered users and addicts—to base her opinion that a methamphetamine addict could use much higher quantities on a 'drug binge.' " 880 F.3d at 980.  Similarly, in *Armstrong*, the defendant was permitted to present the testimony of "four self-described methamphetamine addicts" to attempt to rebut the government's law-enforcement officer testimony about the quantity of typical methamphetamine use.  253 F.3d at 336–37.  This is essentially the same type of expert opinion testimony that Meszaros intends to offer in this case, and the admission of such opinions is consistent with Eighth Circuit precedent.  Meszaros's experience in the field does not materially differ from that of the law-enforcement officers, substance-abuse counselors and drug addicts who routinely testify as experts about drug trafficking, drug use and drug culture despite lacking any formal education or training as to this subject matter.  *See, e.g.*, *Lopez*, 880 F.3d at 978–80; *Holmes*, 751 F.3d at 850; *Armstrong*, 253 F.3d at 336–37.  The United States has neither distinguished these legal authorities nor presented contrary legal authority.

Moreover, district courts "should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility."  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006); *accord Kumho Tire*, 526 U.S. at 152 (holding that a district court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").  "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."  *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (internal quotation marks omitted).  Meszaros, who currently works with drug addicts and

is himself a recovering drug user who was addicted to methamphetamine for 27 years, likely has more knowledge and experience about methamphetamine use and addiction than an average juror. As such, Meszaros's testimony likely will assist the jury in understanding the evidence and deciding disputed facts.

The United States also argues that Meszaros's testimony is inadmissible under Federal Rule of Evidence 403. A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The United States recites this rule but fails to meaningfully apply the rule to Meszaros's anticipated testimony. Because the United States makes no effort to demonstrate how Meszaros's testimony will unfairly prejudice the United States, confuse the issues, mislead the jury, unduly delay the trial, waste time, or needlessly present cumulative evidence, the exclusion of his testimony on these grounds is not warranted.

For these reasons, the United States's motion to exclude the testimony of Juneau's expert witness, Meszaros, is denied.

### III.   Juneau's Motion to Exclude Expert Testimony

Juneau moves to exclude the testimony of the United States's expert witness, Special Agent Michael Flanagan of the Minnesota Bureau of Criminal Apprehension (BCA). Juneau contends that, if the Court excludes his defense expert, the Court necessarily must also exclude the United States's expert on the same grounds.

As addressed above in Part II of this Order, the testimony of Juneau's defense expert will not be excluded. For these same reasons, the testimony of the United States's expert also is admissible. To present expert opinion testimony, a witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert's qualifications need not arise from scientific knowledge or formal education. *See Holmes*, 751 F.3d at 850 (observing that "formal education" about a subject matter "is not required under Rule 702"). "In drug cases, courts frequently admit expert testimony relating to the modus operandi of drug dealers, where the expert witness is a law-enforcement officer whose only qualification is experience in the field." *Id.* The United States represents, and Juneau does not appear to dispute, that Special Agent Flanagan has nearly two decades of experience in law enforcement, including experience investigating drug-trafficking crimes and drug-trafficking organizations, managing confidential informants used to make controlled drug purchases, executing search warrants, and participating in drug-related interviews and proffers.[3]

It is true that there is no evidence in the record establishing that Special Agent Flanagan has formal education or training pertaining to drug use and drug culture. However, as addressed above, "formal education" about the subject matter of expert

---

[3] The United States indicates that Special Agent Flanagan is under subpoena to testify in another criminal trial that might conflict with his ability to testify in this trial. The United States represents that it will "make every effort to coordinate so that Special Agent Flanagan is available to testify in both trials," but that if Special Agent Flanagan is unavailable the United States intends to call Drug Enforcement Administration Special Agent Chris Hage, who has similar qualifications as to the subject of drug trafficking. For the same reasons that Special Agent Flanagan's purported expert testimony does not warrant exclusion, the purported expert testimony of Special Agent Hage also does not warrant exclusion.

testimony "is not required under Rule 702." *Id.* (observing that courts frequently admit expert testimony pertaining to drug trafficking when the expert witness's "only qualification is experience in the field"). And courts have permitted law-enforcement officers, substance-abuse counselors or drug addicts to testify as experts about drug-trafficking topics based primarily or solely on their experience in the field as opposed to formal education or training. *See, e.g.*, *Lopez*, 880 F.3d at 978–80; *Holmes*, 751 F.3d at 850; *Armstrong*, 253 F.3d at 336–37. As such, the exclusion of Special Agent Flanagan's expert testimony is not warranted.

For these reasons, Juneau's motion to exclude the testimony of the United States's expert witness, Special Agent Flanagan, is denied.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Plaintiff United States of America's motion to strike surplusage, (Dkt. 106), is **GRANTED**.

2. Plaintiff United States of America's motion to exclude expert testimony, (Dkt. 114), is **DENIED**.

3. Defendant John Edward Juneau's motion to exclude expert testimony, (Dkt. 128), is **DENIED**.

Dated: March 24, 2022                     s/Wilhelmina M. Wright
                                          Wilhelmina M. Wright
                                          United States District Judge